ADAM GORDON
United States Attorney
MIKAELA L. WEBER
California Bar No. 279391
JOSHUA C. MELLOR
California Bar No. 255870
PETER S. HORN
California Bar No. 321358
New York Bar No. 5333653
Assistant U.S. Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel: 619-546-9734/9733/6795
mikaela.weber@usdoj.gov
joshua.mellor@usdoj.gov
peter.horn@usdoj.gov

Attorneys for the Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 21CR1623-JLS |
|---|---|
| Plaintiff, | **MOTION FOR INQUIRY REGARDING VIOLATIONS OF PROTECTIVE ORDERS** |
| v. | |
| SEYYED HOSSEIN HOSSEINI (5), ALEXANDER DMITRIENKO (6), AURANGZEB AYUB (10), DRAGAN NIKITOVIC (12), aka "Dr. Djek," SHANE NGAKURU (13), EDWIN HARMENDRA KUMAR (14), aka Edwin Harmendra Valentine, MIWAND ZAKHIMI (16), aka Maiwand Zakhimi, OSEMAH ELHASSEN (17), | Date: TBD Time: TBD Courtroom: 2D Honorable Janis L. Sammartino |
| Defendants. | |

The government moves the Court to conduct an inquiry at a hearing[1] with defense counsel in this case regarding violations of this Court's protective orders. As the Court will recall, defendants Dmitrienko and Kumar litigated the protective orders, and the Court entered two orders over the defense's objections. Since then and on multiple occasions so far, protected discovery in this case—materials relating to the third country where Anom data was collected—has been made public and has been used by defense counsel in Anom cases pending in European countries. The protective orders prohibit such disclosure, and the Second Protective Order, covering third-country discovery materials, prohibits defense counsel from even providing a copy of such materials to any defendant.

It is not clear whether these violations of the protective orders are attributable to individual defense counsel before this Court. But it is clear that protected discovery has been improperly disclosed. And it appears Dmitrienko and/or his defense team are likely responsible. The government thus requests that the Court conduct an inquiry of all defense counsel in this case. Also, to the extent any defense counsel engaged any other lawyers or investigators (whether foreign or U.S.-based) as part of their representation in this case, the government requests that all defense counsel be required to promptly produce (1) documents showing those attorneys' and/or investigators' advisement of the protective orders and any acknowledgement to be bound by the protective orders; and (2) documents showing the destruction, return, or requested destruction or return of all protected discovery after their client's sentencing.[2] Following the hearing, the government intends to request appropriate sanctions.

---

[1] The government has contacted Court staff about a possible hearing date and has advised all defense counsel of its intention to file this motion and seek a hearing. Court staff advised government counsel to file this motion, and a hearing date and any briefing schedule would then be set.

[2] To the extent there is some concern about attorney-client privilege or attorney work product, then defense counsel should at least be required to provide such documents to the Court, if not the government too.

*21-CR-1623-JLS*

## I.    BACKGROUND

Between March 2022 and August 2024, the Court entered and defendants acknowledged protective orders as to all defendants who have been extradited and brought before this Court thus far. *See* Dkt. 36, 99, 114, 142, 150, 156, 177, 213, 298, 346. Further, in September 2023, the government moved for the Second Protective Order based on sensitivities regarding the identity of, and materials relating to, the third country in which the Anom data was collected and from which U.S. authorities obtained the data pursuant to mutual legal assistance treaty (MLAT) requests. *See* Dkt. 189 (Gov. motion), 191 (Gov. reply). The defendants—Dmitrienko and Kumar, in particular—opposed. Dkt. 190, 192. In briefing and hearings, the government warned of the risks of disclosure not only by the defense counsel and defendants before this Court, but also by foreign attorneys who may be engaged by the defendants here. Over the defendants' objections, the Court entered the Second Protective Order as the government requested. Dkt. 193. Separately, in January 2024, the Court issued an order on the United States' *ex parte* application and authorized non-disclosure of certain information. Dkt. 223.

These protective orders prohibited public disclosure of discovery materials. Further, under the Second Protective Order, no defense counsel has been permitted to provide a copy of any third-country protected material to any defendant.

Finally, in May 2025, the United States moved for a limited modification of the Second Protective Order. Dkt. 507. This motion requested that two, and only two, categories of information provided in discovery no longer be subject to the heightened protections of the Second Protective Order and instead be subject to the other protective orders entered as to each defendant. The only materials no longer subject to the Second Protective Order were the third country's identity and the court orders (warrants) authorizing collection of the Anom data within that country, for the reasons set forth in the government's motion. Dkt. 507. The Court granted this unopposed motion. Dkt. 511. Importantly—and as the government's motion and Court's order made clear—all other third-country discovery materials remained subject to the Second Protective Order, and

*21-CR-1623-JLS*

that Order as well as the Court's order on the government's *ex parte* application were not modified any further. Dkt. 507, 511.

## II.    IMPROPER DISCLOSURE OF PROTECTED MATERIALS

The United States has become aware of multiple violations of the protective orders so far. As the Court would recall from various hearings in this case, and as has been published in media since the Anom takedown in 2021, criminal prosecutions using Anom evidence have occurred around the world. This section provides a brief overview of instances of apparent violations of this Court's orders, with a focus on the clearest example—in Estonia, where Dmitrienko himself has executed a declaration regarding protected materials.

First, in late 2025, the government learned from Finnish authorities that emails and MLAT documents that apparently were produced in this case under the Second Protective Order were used by the defense in criminal proceedings in Finland. Also, as the government was informed, Dmitrienko testified in Finnish court, although the government is not aware of the specific contours of his testimony. The government has not received a copy of any of those apparently protected materials used in Finland.[3]

Second, around the same time, articles appeared in at least Finnish and German publications about apparent email and MLAT documents produced in this case. These articles discussed these materials, which were produced under the Second Protective Order here, and made allegations similar to those in Dmitrienko's motion to suppress Anom evidence, which this Court denied. The government has reviewed such articles but has not received copies of any of the documents that evidently were provided to various reporters and media outlets.

Third, and later in 2025, the government learned from Lithuanian authorities that emails and MLAT documents that were apparently produced in this case under the Second

---

[3] In addition, in late 2024, the government became aware of several posts on X by an account "Fair Trials Finland Ry" that appeared to feature protected email communications. The government is not including these posts in this motion, but copies can be provided if the Court wishes to review them.

Protective Order were used by the defense in criminal proceedings in Lithuania. The government has not received a copy of any of those apparently protected materials used in Lithuania.

Fourth, in March 2026, Estonian authorities informed the United States that protected emails and MLAT documents—which were clearly subject to the Second Protective Order—were used and provided by the defense in Estonian criminal proceedings. The United States *has* received copies of certain documents that defense counsel there provided to Estonian prosecutors. As Dmitrienko himself confirmed in a declaration, these documents were produced under the Second Protective Order in this case and have been improperly disclosed and used in Estonia (and likely other places). The United States is lodging samples—just examples—of these documents with the Court under seal, along with the corresponding copies of those documents as they were produced to the defendants in this case.

These documents from Estonia are identical to the documents produced under the Second Protective Order in this case. Exhibit 1 is a copy of an MLAT document that has been used in Estonia and which has been provided to the United States. It is a document produced to the defendants in this case at Bates OTS-MLAT-00000001-10, which is being lodged with the Court as Exhibit 2. Notably—and egregiously—the copy from Estonia has redactions over the Protective Order and Bates stamping from the government's production in this case. Exhibit 3 are copies of four email communications between U.S. and third country authorities, which also have been used in Estonia and provided to the United States. These documents are identical to emails produced to the defendants in this case at Bates TS-COMM-000001-8, which are being lodged with the Court as Exhibit 4. Again, the Protective Order and Bates stamping from the government's production was redacted.

Further, Dmitrienko himself signed a declaration "confirm[ing]" that the documents shown to him by defense lawyers involved in the Estonian proceedings "are authentic and were part of the documents made available to [him] during discovery in the criminal proceedings" in this case. This declaration is dated April 12, 2025, when Dmitrienko was

*21-CR-1623-JLS*

still in custody in this District—after he pleaded guilty and before he was sentenced here. *See* Dkt. 451, 520. The declaration also refers to a website from which, "to the best of [Dmitrienko's] knowledge" the "[t]hese documents were available to be downloaded at some time[.]" A copy of the declaration is being lodged with the Court as Exhibit 5.

All of this shows violations of the Court's protective orders. No defendant was permitted to have a copy of materials produced under the Second Protective Order. Dmitrienko's declaration raises the prospect that he may have been given a copy, as he states that the documents were "made available to him" in this case. That alone would be in violation of the Second Protective Order. If he was not given a copy, then a member of his defense team may have improperly disclosed them publicly in foreign proceedings; or a member of his team may have improperly disclosed them to third parties—the media, other attorneys, or others—who then publicly disclosed them. It is also possible that defendants other than Dmitrienko or members of their defense teams disclosed them publicly or in foreign proceedings. Either way, this Court's protective orders have been violated. *Cf., e.g.*, *Woodworkers Tool Works v. Byrne*, 191 F.2d 667, 674-76 (9th Cir. 1951) (discussing application of *res ipsa loquitur* doctrine); *Byrne v. Boadle* (1863) 159 E.R. 299 (*res ipsa loquitur* when barrel rolled out of defendant's warehouse and fell on plaintiff).

The Court should thus inquire of all defense counsel in this case about these violations of its orders. The Court should also require defense counsel, to the extent they engaged any other counsel or investigators in the course of their representation of their clients here, to promptly provide any and all documents showing (1) those attorneys' and/or investigators' advisement of the protective orders and any acknowledgement to be bound by the protective orders; and (2) the destruction, return, or requested destruction or return of all protected discovery after their client's sentencing. The government then intends to request appropriate sanctions.

## III.    REQUEST FOR SEALING

The United States moves to seal lodged Exhibits 1 through 5 until further order of this Court. Pursuant to the Second Protective Order, these documents may not be publicly

disclosed, and the government thus moves to lodge them under seal and for an order that they be maintained under seal until further order of the Court. The government is submitting a proposed sealing order in conjunction with this motion.

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court conduct an inquiry regarding the violations of this Court's protective orders and require production from defense counsel as set forth above. The United States then intends to request appropriate sanctions for the breach of the Court's orders.

DATED:     April 3, 2026                     Respectfully submitted,

ADAM GORDON
United States Attorney

*s/ Peter S. Horn*
MIKAELA L. WEBER
JOSHUA C. MELLOR
PETER S. HORN
Assistant U.S. Attorneys
Attorneys for the United States

*21-CR-1623-JLS*